**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| CELSIUS NETWORK LLC, *et al.,* | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors. | Chapter 11 |
| MOHSIN Y. MEGHJI, as Representative for the Post-Effective Date Debtors, | |
| Plaintiff, | Adv. Pro. No. 24-04006 (MG) |
| v. | |
| CEZARY FALBA *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' KROL AND REICHELT'S MOTION TO DISMISS**

*A P P E A R A N C E S :*

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for Mohsin Y. Meghji, Litigation Administrator for Celsius Network LLC*
One Bryant Park
New York, New York, 10036
By:     Mitchell P. Hurley, Esq.
          Dean L. Chapman Jr., Esq.

2300 North Field Street
Dallas, Texas 75201
          Elizabeth D. Scott, Esq.

IEVGENIIA P. VATRENKO, ESQ.
*Attorney for Defendants Lukasz Krol and Dennis Reichelt*
2 Northside Piers
Brooklyn, New York 11249
By:     Ievgeniia P. Vatrenko, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested motion (the "Motion," ECF Doc. # 31, including the supporting Memorandum of Law annexed thereto, ECF Doc. # 31-2) of defendant Lukasz Krol ("Krol" or "Defendant Krol"), seeking dismissal, with prejudice, of the adversary complaint (the "Complaint," ECF Doc. # 1) filed by Mohsin Y. Meghji in his capacity as Litigation Administrator (the "Litigation Administrator" or "Plaintiff") for Celsius Network LLC and its Debtor Affiliates ("Celsius" or the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), pursuant to the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and its Debtor Affiliates (Conformed for MiningCo Transaction)* (the "Plan," ECF Doc. # 4289).[1]

On April 21, 2025, the Litigation Administrator filed a memorandum of law in opposition to the Motion (the "Opposition," ECF Doc. # 36).  On May 23, 2025, Krol filed a reply (the "Reply," ECF Doc. # 45).

On June 9, 2025, Defendant Dennis Reichelt ("Reichelt" or "Defendant Reichelt") filed a joinder to the Motion (the "Joinder," ECF Doc. # 47).  Reichelt contends that joinder is proper because he is "similarly situated" to Krol.  (Joinder at 2.)  On July 1, 2025, the Litigation Administrator filed a response to the Joinder (the "Joinder Opposition," ECF Doc. # 50); the Litigation Administrator seeks denial of the Joinder on the same bases as set forth in its Opposition to Krol's Motion.  (Joinder Opposition at 2.)  After careful consideration of the record, the Court concludes that joinder of Reichelt in the Motion is proper, as the Complaint makes clear that Krol and Reichelt are similarly situated as to all applicable causes of action.  Accordingly, this

---

[1]    References to ECF docket numbers shall refer to those in the adversary proceeding unless otherwise specified.  Additionally, defined terms used but not defined herein shall have the meanings ascribed to them in the Complaint, unless otherwise specified.

Memorandum Opinion resolves the Motion as applicable to both Defendant Krol and Defendant Reichelt.[2]

For the reasons discussed below, the Court **GRANTS** the Motion in part, without prejudice to replead as to the dismissed claims.

## I.    BACKGROUND

The following facts are drawn from the Complaint, except where otherwise indicated.

### A.  Celsius' Business

#### 1.  CNL's Business

Debtor Celsius Network Limited ("CNL") is a private limited company founded in 2017 and incorporated under the laws of England and Wales.  (Complaint ¶¶ 5, 31.)  CNL's objective was to become one of the first cryptocurrency platforms offering users the ability to earn "rewards" and secure loans using their digital assets as collateral.  (*Id.* ¶ 31.)  CNL's business model focused on the deployment of digital assets to generate income and fund its operation and growth.  (*Id.* ¶ 32.)  Among other activities, CNL offered loans of fiat currency and "stablecoins" (cryptocurrency pegged to fiat currencies) to third-party retail borrowers in exchange for the borrower's posting of cryptocurrency exceeding the amount of the loan.  (*Id.*)

In or around late 2019 or early 2020, Celsius began to consider additional revenue-generating investment strategies, including "staking" and activities involving decentralized finance ("DeFi").  (*Id.* ¶¶ 32–34.)   Staking involves the provision of cryptocurrency coins to a third-party platform; the practice does not include trading different forms of cryptocurrencies or speculating in cryptocurrency assets.  (*Id.* ¶ 33.)  Unless the coins are subject to a lockup period,

---

[2]       All references herein to the Motion, the Opposition, and the Reply shall incorporate factual allegations or arguments relevant to Defendant Krol and/or Defendant Reichelt, in their individual capacities, where applicable. Defendants Krol and Reichelt are collectively referred to in this Opinion as the "Moving Defendants."

the original staking party typically has the right to have the "staked" coins returned.  (*Id.*)  DeFi broadly refers to activities on a blockchain which facilitate financial services like borrowing, lending, and market-making without the need for a traditional institutional intermediary.  (*Id.* ¶ 34.)  DeFi instead typically leverages the use of "smart contracts," or programs stored on the blockchain which operate based on preset conditions.  (*Id.*)  These smart contracts facilitate the execution of agreements and other functions on an automated basis without involving intermediaries.  (*Id.*)

> 2.  Transactions Involving Celsius KeyFi & Jason Stone
>
> > a.  *Celsius Direct Transfers: Staking Services Agreement & Deployment of CNL Coins in DeFi Activities*

In August 2020, CNL executed an agreement in principle with Jason Stone ("Stone"), a self-identified "pioneer" in the staking space.  (*Id.* ¶ 36.)  Per the terms of the August 2020 agreement, Stone was appointed CEO of a new CNL subsidiary established to manage Celsius' staking and DeFi activities.  (*Id.* ¶¶ 37–38.)  Anticipating a potentially lengthy pre-closing window, the parties authorized Stone to begin deployment of Celsius' coins on behalf of CNL pending the finalization of the acquisition.  (*Id.* ¶ 39.)  On October 1, 2020, CNL and the subsidiary, KeyFi Inc. ("KeyFi Vehicle"), executed a non-binding memorandum of understanding ("MOU") concerning the deployment of CNL's coins.  (*Id.* ¶ 41.)  The MOU was developed in anticipation of the parties' planned execution of an asset purchase agreement pursuant to which CNL would formally acquire KeyFi Vehicle's business.  (*Id.*)  Pursuant to a service agreement executed one week after the signing of the MOU, KeyFi Vehicle was formally granted temporary authority to deploy CNL coins in DeFi and staking activities.  (*Id.* ¶¶ 41–42.)  The Litigation Administrator alleges upon information and belief that Defendants Krol and Reichelt were, "at some time . . . shareholder[s]" of KeyFi Vehicle.  (*Id.* ¶¶ 11, 17.)

4

The service agreement was amended and superseded on or around December 31, 2020. (*Id.* ¶ 43.) The amended service agreement replaced KeyFi Vehicle with the newly formed CNL subsidiary Celsius KeyFi LLC ("Celsius KeyFi"). (*Id.*) Pursuant to the amended service agreement, as well as the asset purchase agreement contemporaneously executed by CNL, KeyFi Vehicle, and Celsius KeyFi, Stone was authorized, in his new role as CEO of Celsius KeyFi, to continue deploying CNL's coins as part of authorized DeFi activities. (*Id.* ¶¶ 43–45.)

During the time that Stone was CEO of Celsius KeyFi, both Krol and Reichelt were "contractor[s]" of Celsius KeyFi. (*Id.* ¶¶ 11, 17.) During this period, the Litigation Administrator represents that Celsius wallets made five direct transfers to Defendant Reichelt (the "Reichelt Celsius Direct Transfers") and four direct transfers to Defendant Krol (the "Krol Celsius Direct Transfers," and together with the Reichelt Celsius Direct Transfers and direct transfers allegedly made to other Defendants, the "Celsius Direct Transfers"), as follows:

| *Celsius Direct Transfers* | |
| --- | --- |
| **Reichelt Celsius Direct Transfers** | **Krol Celsius Direct Transfers** |
| On or around January 22, 2021, Celsius Wallets made two transfers of approximately 1.54 wBTC, each, to Reichelt, with the following transaction hashes: <br><br> 1. 0xd1ecc352d67f6dd96099e33 81e148aa66d3e932bbf0d4c37c 3a22a7133ea 5330 <br> 2. 0x14164abea9719ddaa27e62035e278a a2b26776fa85c1986bfff0e5118d18 7962 <br><br> (Complaint ¶ 69(a)(i).) | On or around December 29, 2020, Celsius Wallets transferred approximately 30,000 USDT to Krol, documented by the following transaction hash: <br><br> 1. 0x8f556d020ceb73ec208cb19da588 7400c686a03953b39bfc3e59bc819 35c e68a <br><br> (Complaint ¶ 69(c)(i).) |
| On or around March 17, 2021, Celsius Wallets made two transfers of approximately 100,000 USDC, each, to Reichelt, with the following transaction hashes: <br><br> 1. 0x59bf6b288b82a029a40a9172d9dd49 c12622eea98b1adaf39b1fc8a5a750 | On or around January 22, 2021, Celsius Wallets made two transfers of 1.54 wBTC, each, to Krol, with the following transaction hashes: |

| Celsius Direct Transfers | |
|---|---|
| **Reichelt Celsius Direct Transfers** | **Krol Celsius Direct Transfers** |
|     b880<br>2.  0x59bf6b288b82a029a40a9172d9dd49c12622eea98b1adaf39b1fc8a5a750b880<br><br>(Complaint ¶ 69(a)(ii).) | 1.  0xd1ecc352d67f6dd96099e3381e148aa66d3e932bbf0d4c37c3a22a713ea 5330<br>2.  0x14164abea9719ddaa27e62035e278aa2b26776fa85c1986bfff0e5118d18 7962<br><br>(Complaint ¶ 69(c)(ii).) |
| On or May 12, 2021, Celsius Wallets made a transfer of approximately 25,000 USDC to Reichelt, documented by the following internal ID from Binance:<br>1.  No. 60200873036<br><br>(Complaint ¶ 69(a)(iii).) | On March 22, 2021, Celsius Wallets transferred approximately 25,000 USDC to Krol, with the following transaction hash:<br>1.  0x0d286c0dc70b41667a915d3acfc6d9219b2861dc63fcee2e114b591d1a3e 0018<br><br>(Complaint ¶ 69(c)(iii).) |

Additionally, the Litigation Administrator asserts that Celsius Wallets made the

following direct transfers to one or more Contractor Defendants (the "Contractor Celsius Direct

Transfers"), as follows:

- On or around January 27, 2021, Celsius Wallets made a transfer of approximately 15 ETH to one or more Contractor Defendants, with the following transaction hash:

  1. 0x09c1377080875813376cb46b0a7ec905a92f8d19dc3055f47adc5d63a55 825b1

(Complaint ¶ 69(e)(i).)

- On or around March 26, 2021, Celsius Wallets made six transfers comprising of approximately: 20 ETH, 15 ETH, 15 ETH, 7.5 ETH, 7.5 ETH, and 15 ETH to one or more of the Contractor Defendants, with the following transaction hashes:

  1. 0xbbf5dfc51b644e0f182dbf9080129c54b6b46badcc03b8763861cd4558e5 6143

  2. 0x5be316e70262cd8b6d501f2a20659babd4e1bea971c590c6fb1bec80b5d8 a9a3

  3. 0xea646bae879edbed7707f08fe863bdb8aa329fdf1533ab9f632f387f55cf0a 15

  4. 0xca4b084baebc3e281f88a38cd8c225aac59826b9c5cd079d521aa0660f6a 98fe

  5. 0xb98aa043e0f2dffaee4a2cfe3fe15f692cbd9c210bc8cedf462ca934d9197d a8

  6. 0x96d2153f76fb97377829b1d58892a9c10f51956594c724ca4a7ef9aa7567 dd77

(*Id.* ¶ 69(e)(ii).)

- On or around February 23, 2021, Celsius Wallets made a transfer of approximately 15,000 USDT to one or more of the Contractor Defendants, with the following transaction hash:

  1. 0xc488959b4ed2660ed244a532b2106554a98a5b73e8b06552169c5cdc0cb c3bcb

  (*Id.* ¶ 69(e)(iii).)

- On information and belief, Celsius Wallets made additional transfers to one or more of the Contractor Defendants as well which Plaintiff will identify in discovery.

  (*Id.* ¶ 69(f).)

      b.  *Breakdown in Relationship and March 2021 Board Resolutions*

As early as late 2020, Celsius executives became concerned with Stone and other Celsius KeyFi executives' (the "KeyFi Executives") apparent unwillingness to provide timely reporting and other mechanisms for visibility into the deployment of CNL coins.  (*Id.* ¶¶ 46–47.) Additionally, the KeyFi Executives' deployments of CNL assets triggered two separate liquidation events in November 2020 and February 2021, resulting in a combined loss of nearly 30 million USD.  (*Id.* ¶ 48.)  Troubled by these events, Celsius in early 2021 instructed the KeyFi Executives to return the coins Celsius had transferred for deployment.  (*Id.* ¶ 49.)  Stone and the KeyFi Executives initially agreed to develop a plan to facilitate the return of the coins, but ultimately failed to execute on the plan.  (*Id.* ¶¶ 50–51.)  Accordingly, on March 26, 2021, Celsius KeyFi's board of directors issued written resolutions unequivocally commanding Stone and the KeyFi Executives to return all of CNL's coins and other cryptocurrency assets (the "March 2021 Resolutions").  (*Id.* ¶¶ 52–53.)  In the weeks following the issuance of the March 2021 Resolutions, the KeyFi Executives voluntarily returned some of CNL's coins.  (*Id.* ¶ 55.)

      c.  *Celsius Indirect Transfers: Continued Misappropriation & Use of Money Laundering App to Mask Transfer Destinations*

Ultimately, Stone and the KeyFi Executives allegedly failed to return all of CNL's assets following the March 2021 Resolutions, keeping some coins for themselves and transferring

others to third parties.  (*Id.* ¶ 57.)  Additionally, Stone allegedly "regularly employed" a money

laundering application called Tornado Cash, which was later banned by OFAC, to "obfuscate the

origin, destination and counterparties to his transfers, including transfers some of the Defendants

in this action."  (*Id.* ¶ 63.)  Tornado Cash is a "a privacy protocol 'mixer' that masks the path of

ETH" transferred from a sender to a receiver on the blockchain.  (*Id.*)  For example, a user can

deposit ETH to Tornado Cash, and subsequently withdraw the ETH using a wallet with "a

different public key, or address, thus obscuring the final destination of the transaction on the

blockchain."  (*Id.*)

The Litigation Administrator asserts that Stone and the KeyFi Executives "caused Celsius

to make at least fifty-eight transfers," consisting of Celsius' property or the proceeds thereof, to

Tornado Cash.  (*Id.* ¶ 64.)  As relevant to this adversary proceeding, Stone and/or the KeyFi

Executives made an "airdrop related to a prior deployment of CNL's coins . . . into a [KeyFi

Executive-affiliated] wallet of 1.4 million DAI, a stablecoin pegged to the value of the U.S.

dollar," without notifying Celsius.  (*Id.* ¶¶ 65–66.)  Subsequently, Stone accessed the wallet and

transferred the DAI to a second wallet controlled by the KeyFi Executives, and converted the

DAI into 485 ETH in three separate transactions.  (*Id.* ¶ 66.)  Thereafter, in seventeen transfers

between September 22, 2021, and concluding on October 12, 2021, the second wallet transferred

the 485 ETH to Tornado Cash.  (*Id.*)  Finally, according to testimony offered by Stone, he

"retrieved the funds transferred to Tornado Cash and retained a portion for himself and

transferred another portion to Defendants Maciej, Lukasz Krol, and Dennis Reichelt, with the

assets purportedly divided evenly among the three."  (*Id.*)

As relevant to the Moving Defendants specifically, the Litigation Administrator

represents upon information and belief that Celsius Wallets made one indirect transfer to

Defendant Reichelt (the "Reichelt Celsius Indirect Transfer"). (*Id.* ¶¶ 71–72.) The Litigation

Administrator also alleges, on information and belief, one such indirect transfer to Defendant

Krol (the "Krol Celsius Indirect Transfer," and together with the Reichelt Celsius Indirect

Transfer and other alleged indirect transfers to other Defendants, the "Celsius Indirect

Transfers"). (*Id.*) The details of the Reichelt Celsius Indirect Transfer and the Reichelt Celsius

Indirect Transfer are as follows:

| Celsius Indirect Transfers | |
|---|---|
| **Reichelt Celsius Indirect Transfer** | **Krol Celsius Indirect Transfer** |
| On information and belief, Reichelt received approximately 80.83 ETH from Tornado Cash, proceeds of the DAI that had previously been transferred by Executive out of the Celsius 0xb1 wallet and into a wallet owned or controlled by the KeyFi Executives in transaction 0xabc88ccfbf49bc3984a59a84e1637d364563d5f660557d2d4927f5d58a12 600d before being swapped into ETH and sent to Tornado Cash.<br><br>(Complaint ¶ 72(a)(i).) | On February 19, 2022, Krol received approximately 10 ETH in transaction 0xf22917293b0d618e815c2dc04d6c93b2b163f626f0f066bca7b0884943b9 882e, with the transfer coming from the KeyFi Executives' 0x40c839B831C90173dC7fBCe49A25274a4688ddD9 wallet, which received assets from Defendant Levan Mkheidze's Binance account (opened and at all times relevant herein controlled by the KeyFi Executives).<br><br>(Complaint ¶ 72(b)(i).) |

Additionally, the Litigation Administrator asserts that Celsius Wallets made the

following indirect transfers to one or more Contractor Defendants (the "Contractor Celsius

Indirect Transfers"), as follows:

- On or around March 23, 2021, one or more Contractor Defendants received approximately 50,000 LINK that came from or passed through the Binance account of Levan Mkheidze in transaction 0x6c17c1320b2e652f9ffa19df466464f01a0220e5fa738f237264771513915 18e (opened and at all times relevant herein controlled by the KeyFi Executives) which was funded by Celsius Wallets.

  (Complaint ¶ 72(d)(i).)

- On information and belief, additional Contractor Defendants received additional Celsius Indirect Transfers as well that Plaintiff will identify in discovery.

  (*Id.* ¶ 72(e)(i).)

d. *Executive Transfers: Transfers from KeyFi Executive Wallets*

Separately, the Litigation Administrator asserts that certain assets were "sent from

Executive Wallets" to Defendant Krol which Celsius has "not yet specifically traced to Celsius

Wallets." (*Id.* ¶ 74.) These transfers constitute a subset of what the Complaint refers to as the

"Executive Transfers," a term collectively identifying transfers of "assets . . . sent from or

through Executive Wallets to the Contractor Defendants." (*Id.* ¶ 73.)

As relevant to the Motion, Defendant Krol purportedly received the following Executive

Transfers (the "Krol Executive Transfers"):

| **Krol Executive Transfers** |
| --- |
| Between April 23, 2021 and February 19, 2022, Krol received 435 ETH across five (5) transfers from wallets owned or controlled by the KeyFi Executives, with the following transaction hashes: |
|    1. 0xf22917293b0d618e815c2dc04d6c93b2b163f626f0f066bca7b0884943b9882e |
|    2. 0xb3875ad6e959a7226b6e35dfea8753efed8aec03349767d7d8489a5a72aae68f |
|    3. 0xc08154b1489d90de8bbc00842c9122fdb0714a99476250e6173225aabf0c5e65 |
|    4. 0x0aa71c5e26d94618d42860904d05623f334d6a71ee06b71ccb993ec0110644a7 |
|    5. 0x77e0c33b27c7afb7dc1cbd18a209e8b7707ef63dfb97834c8e518a2fb83bb23c |
| Separately, on April 30, 2021, Krol received 5.26 WBTC from wallets owned or controlled by the KeyFi Executives, as documented by the following transaction hash: |
|    1. 0x1a43f0169cf73f3411de614f54bec9c8540ac37aa9b0c6f1898bd00685453290 |
| (Complaint ¶ 74(a).) |

**B. Procedural History**

1. Chapter 11 Filing and Stone Adversary Proceeding

The Debtors filed the Chapter 11 Cases on July 13, 2022. (Motion at 13.) Celsius

subsequently commenced an adversary proceeding against Stone and the KeyFi Executives on

August 23, 2022, raising claims related to their alleged misappropriation of Celsius assets. (*Id.*

(citing Complaint, *Celsius Network Ltd. v. Executive*, ECF #1 (S.D.N.Y. Bankr. filed Aug. 23,

2022).)  The KeyFi Executives ultimately settled the adversary proceeding in June 2024,

agreeing to return "substantial assets" to Celsius pursuant to the terms of the settlement

agreement.  (*Id.*)

### a.  The Complaint

The Litigation Administrator commenced the instant adversary proceeding on July 13,

2024.  The Complaint focuses on Celsius property (the "Subject Property") that Stone and the

KeyFi Executives allegedly misappropriated on various occasions.  The Complaint alleges a

number of claims against various defendants, including Defendants Krol and Reichelt, who

allegedly received the Subject Property on multiple occasions.  The Litigation Administrator

requests relief pursuant to the following causes of action set forth in the Complaint: (1) turnover

under 11 U.S.C. § 542; (2) turnover and accounting of documents under 11 U.S.C. § 542(e); (3)

actual fraudulent transfer; (4) constructive fraudulent transfer; (5) unjust enrichment; (6)

accounting; (7) conversion; (8) aiding and abetting Stone's breach of fiduciary duties; and (9)

violations of the Rackeeter Influenced and Corrupt Organizations (RICO) Act.[3]  (Complaint ¶¶

87–179.)

### b.  The Motion

Defendant Krol filed the Motion on April 21, 2025.  The Motion seeks to dismiss the

Complaint on the bases that the Litigation Administrator fails to state a claim as to each of the

causes of action against the Moving Defendants and fails to plead applicable allegations of fraud

with particularity.  As to the actual fraudulent transfer claims, the Moving Defendants argue that

the Litigation Administrator impermissibly attributed two direct transfers, identified in

---

[3]    The Litigation Administrator seeks treble damages in connection with its RICO claims.  (Complaint ¶¶
180–82.)

paragraphs 69(a)(i) and 69(c)(ii) of the Complaint, to multiple recipients, including Defendant

Krol and Defendant Reichelt.  (Motion at 20; Joinder at 4.)  As to the remaining Celsius Direct

Transfers, the Moving Defendants assert that the Complaint fails to establish either actual

fraudulent intent or the traditional "badges of fraud."  (Motion at 20*.*)  The Moving Defendants

also contend that the constructive fraudulent claims arising out of these direct transfers similarly

fail as the Litigation Administrator "has not adequately pled lack of reasonably equivalent

value." (*Id.* at 25.)

With respect to the Celsius Indirect Transfers identified in paragraph 72 of the

Complaint, the Moving Defendants allege that the claims "appear[] to allege a fraudulent transfer

against the Executive Defendants" and that the Moving Defendants are merely "mediate

transferee[s]," a fact fatal to any theory of actual and constructive fraudulent transfer arising out

of these transactions.[4]  (*Id.* at 21–22, 25.)

The Moving Defendants separately claim that the "group allegations" set forth in

paragraphs 69(e) and 72(d) of the Complaint, which allege fraudulent direct and indirect

transfers against the "Contractor Defendants," constitute impermissible group pleading, or (as

relevant to the constructive fraudulent transfer claims arising out of these transactions) offer only

an "unsupported and conclusory statement that Plaintiff received less than reasonably equivalent

value or received no consideration" in exchange for the transfers.[5]  (*Id.* at 23–24.)  Similarly,

---

[4]    Similarly, in support of the Joinder, Defendant Reichelt argued that the allegation in the Complaint that
Stone "transferred funds from Celsius's 0xb1 wallet to Tornado Cash and retained a portion for himself and
transferred another portion" to the Moving Defendants "(i) does not establish that Reichelt knew the source of the
funds; (ii) does not show that Reichelt participated in Stone's decision to use Tornado Cash; (iii) suggests that Stone,
not Reichelt, controlled these transactions; and (iv) fails to establish that Reichelt knew the funds were
misappropriated."  (Joinder at 3.)

[5]    Defendant Reichelt similarly argued in seeking to join the Motion: "[t]he Contractor Defendants, defined as
all defendants aside from the [KeyFi Executives], were all contractors of either or both of [Celsius KeyFi] or [KeyFi
Vehicle]. This group pleading is particularly problematic under Rule 9(b), which requires fraud to be pled with
particularity as to each defendant."  (Joinder at 3.)

Defendant Krol asserts that the Litigation Administrator's fraudulent transfer claims concerning the transfers of assets from the KeyFi Executives fail because the transfers were not made to Krol, who is a mediate transferee, and because the settlement between Stone and Celsius KeyFi resolves claims for transfers from the Celsius Wallets to the Executive Wallets. (*Id.* at 26–27.)

As to the Litigation Administrator's unjust enrichment claim, the Moving Defendants contend that the claim is duplicative of the Complaint's fraudulent transfer claims. (Motion at 27–28.) Additionally, they assert that the Litigation Administrator does not adequately plead a fiduciary relationship to support its accounting claim. (*Id.* at 28–29.) As to the conversion claim, which only applies to the Celsius Direct Transfers, the Moving Defendants claim that the Litigation Administrator fails to "make factual allegations as to how [they] exercised control over Celsius's assets." (*Id.* at 29.) With respect to the aiding and abetting cause of action, the Moving Defendants similarly assert that the Complaint fails to state a claim because it "does not adequately allege facts giving rise to a strong inference of [the Moving Defendants'] actual knowledge of the alleged breach of fiduciary duty or identify a single affirmative act by [them] that assisted, let alone substantially assisted, Stone's violations." (*Id.* at 30–31.)

Finally, the Moving Defendants dispute the Litigation Administrator's RICO claim, arguing that the Complaint offers "no showing of [their] knowing participation in Stone's activities that would be sufficient to support a claim that there was a collective enterprise engaging in a common scheme to defraud Celsius," and no specific facts to support the Plaintiff's claims of mail and wire fraud.[6] (*Id.* at 32–33.) Furthermore, the Moving Defendants

---

[6]    Defendant Reichelt separately argued that "[t]he Complaint's RICO allegations are entirely conclusory as to Reichelt," adding: "[t]he Complaint alleges that thirteen Contractor Defendants, Defendant Chkeidze, and Defendant Mkheidze voluntarily and intentionally devised and participated in one or more criminal schemes to perpetuate unlawful transfers of Celsius' assets during the relevant period, including without limitation, the Fraudulent Transfers. This bare allegation, without any facts specific to Reichelt, cannot satisfy Rule 9(b) or establish the elements of a RICO claim." (Joinder at 4.)

contend that "even if Celsius could allege the predicate criminal acts against [them]," it cannot

establish a "pattern by making the requisite showing that the defendants' acts are "related, and

that they amount to or pose a threat of continued criminal activity"—whether under a theory of

"open-ended" or "closed-ended" continuity.[7]  (*Id.* at 33 (internal citations omitted).)

### c. The Opposition

The Litigation Administrator's Opposition challenges the Moving Defendants' arguments

for dismissal.  As to turnover, the Litigation Administrator asserts that this Court's recent

opinion in another Celsius adversary proceeding defeats the Moving Defendants' argument that

the "Subject Property is in dispute and the Subject Property has been pleaded as part of a

fraudulent transfer claim," as well as the argument that the inclusion of a fraudulent transfer

claim necessarily precludes the assertion of a parallel turnover claim.  (Opposition at 15–17

(citing *Meghji v. Castel (In re Celsius Network LLC)*, 669 B.R. 108 (Bankr. S.D.N.Y. 2025)

(hereinafter the "Curated Opinion")).  By extension, the Plaintiff submits, its claim under Section

542(e) is adequately pleaded since the information sought relates to the Subject Property, which

is property of the estate.  (Opposition at 17.)

As to the Complaint's fraudulent transfer claims, the Litigation Administrator emphasizes

that it is not the intent of the Moving Defendants—the transferees—at issue, but that of the

KeyFi Executives, who effectuated the applicable transfers.  (Opposition at 18, 20–21 (citing

Curated Opinion, 669 B.R. at 118 (internal citations omitted)).)  The Litigation Administrator

contends that the Complaint adequately pleads several "badges of fraud," including close

association, insolvency, and lack of reasonably equivalent value, in support of its fraudulent

---

[7]    The Moving Defendants separately contend that the RICO claim is subject to dismissal due to the
Litigation Administrator's failure to file a RICO case statement.  (Motion at 33 (internal citations omitted).)

transfer claims.  (Opposition at 18–20, 22.)   Plaintiff also challenges the Moving Defendants'

"good faith mediate transferee" argument as raising an affirmative defense not ripe for resolution

at the motion to dismiss stage.[8]  (*Id.* at 21–22 (citing Curated Opinion, 669 B.R. at 122).)  The

Litigation Administrator separately maintains that the Complaint identifies the challenged

transfers with substantial specificity to satisfy the requirements of Rule 9(b).  (Opposition at 22–

23.)  Separately, the Plaintiff disputes Defendant Krol's contention that Celsius' settlement with

the KeyFi Executives resolves the fraudulent transfer claims arising out of the Krol Executive

Transfers.  (*Id.* at 23–24.)

    As to the unjust enrichment claims, the Litigation Administrator argues that the

Complaint "includes numerous additional facts for which the only reasonable inference is that

the Fraudulent Transfers to [the Moving Defendants] were not legitimate payments of

compensation for software development services," and furthermore contends that the question of

whether Celsius "received any value related to the assets transferred to [the Moving Defendants]

. . . is at best a fact issue inappropriate for resolution at the motion to dismiss stage."  (*Id.* at 24–

25.)  The Plaintiff separately rejects as contrary to applicable law the Moving Defendants'

argument that the unjust enrichment claims should be dismissed as duplicative of the fraudulent

transfer claims.  (*Id.* at 25–26 (citations omitted).)

    As to accounting, the Litigation Administrator notes that, as this Court recognized in the

Curated Opinion, a claim for accounting does not require the existence of a fiduciary relationship

or confidential relationship where the account is of a "complicated" character.  (*Id.* at 26–27

(citing Curated Opinion, 669 B.R. at 122–23).)  As to the conversion claims, Plaintiff submits

---

[8]       The Litigation Administrator also submits that the good faith mediate transferee defense is not applicable to
the Executive Transfer claims against Defendant Krol.  (Opposition at 21.)

that "the only reasonable inference that can be drawn from the allegations in the Complaint" is

that the Moving Defendants exercised "complete and exclusive control" over the relevant Celsius

assets.  (Opposition at 27.)  With respect to its aiding and abetting claims, the Litigation

Administrator argues that the "lack of knowledge" defense set forth in the Motion is undercut by

the "well pleaded allegations in the Complaint," including but not limited to the Moving

Defendants' status as owners of KeyFi Vehicle, which received a copy of the written resolution

commanding Stone to return CNL's coins in March 2021.  (*Id.* at 28–29 (citing Complaint ¶¶ 17,

52–53).  The Litigation Administrator notes that "actual knowledge" of a breach of fiduciary

duty may be established by a "financial motivation," and argues that the Complaint establishes

such a financial motivation as the Moving Defendants have "profited handsomely" from their

participation in the KeyFi Executives' scheme.  (Opposition at 30 (citing *Overton v. Art Fin.

Partners LLC*, 166 F. Supp. 3d 388, 414 (S.D.N.Y. 2016).)

    Finally, the Plaintiff maintains that its RICO claims against the Moving Defendants[9] are

adequately-pleaded, including as to intent, in light of the relaxed pleading standard applied to

civil RICO actions wherein a plaintiff merely "claims that mails or wires were simply used in

furtherance of a master plan to defraud."  (Opposition at 30–31 (internal citations omitted).)  The

Litigation Administrator additionally argues that, since the Complaint alleges predicate acts for a

period greater than two years, the Complaint adequately alleges "closed-ended" continuity (and

alternatively pleads "open-ended" continuity based on the "nature of the RICO enterprise and

predicate acts alleged" in this case).  (*Id.* at 31–32.)

---

[9]     With respect to the additional arguments offered by Defendant Reichelt in the Joinder, the Litigation
Administrator responds that the Complaint sets forth in detail the "criminal enterprise Reichelt and the other
Defendants employed to defraud Celsius," outlining "the manner in which the scheme was executed including
through the use of exchange accounts fraudulently opened in assumed names and cryptocurrency mixers, as well as
numerous predicate acts, including Reichelt's role in facilitating the scheme through his receipt of Celsius'
misappropriated and laundered assets[.]"  (Joinder Opposition at 3–4.)

*d. The Reply*

The Reply reiterates the bases for dismissal articulated in the Motion and disputes the arguments set forth in the Opposition.  First, the Moving Defendants assert that relief for turnover and accounting are unavailable because the Subject Property is not property of the estate, and the Litigation Administrator's assertion otherwise "contradicts the entire premise of its own fraudulent transfer claims, which necessarily acknowledge that legal title to the property passed to [the Moving Defendants]."  (Reply at 6.)  The Moving Defendants add that the Litigation Administrator's attempt to plead these claims in the alternative is a theory that "would circumvent specific statutory requirements."  (*Id.*)  Additionally, as relevant to the Plaintiff's claim for turnover of records under Section 542(e) of the Bankruptcy Code, the Moving Defendants submit that the "blockchain records are inherently public and transparent," and therefore the Litigation Administrator "should already have 'any wallet addresses containing Celsius property and proceeds thereof.'"  (*Id.* at 6–7.)  Finally, the Moving Defendants reject the Litigation Administrator's claim that the transfers at issue are "of a complicated character," countering that an accounting that is only appropriate "where there is a need to unravel complex financial dealings between parties with ongoing relationships, not simple one-way transfers of specified amounts of cryptocurrency to a third party."  (*Id.* at 11 (internal citations omitted)).

As to the fraudulent transfer claims, the Moving Defendants assert that the Litigation Administrator's "allegations of 'badges of fraud' specific to [the applicable] transfers . . . are conclusory."  (*Id.* at 7.)  Additionally, they contend that the Complaint "repeatedly engages in "impermissible group pleading," a "fatal defect" which the Opposition makes no meaningful effort to defend.  (*Id.*)  The Moving Defendants separately allege that the Litigation Administrator's response regarding the "subsequent transferee" defense "misconstrues the

17

applicable law." (*Id.*)  The Moving Defendants submit that its subsequent transferee argument is

not merely an "affirmative defense," but rather an identification of Plaintiff's failure to plead

"factual allegations supporting a lack of good faith," since "subsequent transferees stand in a

fundamentally different position than initial transferees because they received property from

someone other than the debtor." (*Id.* at 8–9.)  Finally, with respect to the Executive Transfer

Claims, Defendant Krol submits that these transfers are deficient for two additional reasons: (1)

the claims are "based on transfers from the Executive Defendants' wallets that 'have not yet been

specifically traced to Celsius Wallets,'" and which were released when Plaintiff "compromised"

and "settl[ed] its claims against the Executive Defendants" (*id.* at 9 (citing Complaint ¶ 74(a).);

and (2) the Complaint fails to allege, in a non-conclusory fashion, any facts showing that the

Executive Defendants were insolvent at the time of the Executive Transfers. (*Id.* at 9.)

      The Moving Defendants next contend that the Litigation Administrator's unjust

enrichment claim "fails as a matter of law," amounting instead to a "threadbare recital" of the

elements of the applicable cause of action. (*Id.* at 9–10.)  They argue first that the Complaint

"fails to allege any specific facts explaining why compensation" for the Moving Defendants'

software development services to KeyFi Vehicle "would be inequitable." (*Id.* at 10.)  Second,

they assert that the Litigation Administrator "improperly asks the Court to infer inequity merely

from the form, timing, and routing of the transfers," rather than plead specific facts related to the

"amounts . . . received" relative to the services rendered, the Moving Defendants' contractual

limitations with respect to payment, and their knowledge of the source of the payment. (*Id.*)

Finally, the Moving Defendants affirm their argument that the unjust enrichment claim is

duplicative, as it "is based on identical factual allegations as the fraudulent transfer claims; seeks

identical relief (return of the same transfers); relies on identical characterizations of the transfers

as improper; and adds no additional elements beyond those already part of the fraudulent transfer claims." (*Id.*)

As to the Plaintiff's conversion claims, the Moving Defendants maintain that Stone is the "proper party" against whom to pursue such claims, as he "had access to and exercised control over Subject Property in the Celsius Wallets when he transferred it." (*Id.* at 12.) The Moving Defendants contend that the case law cited by the Litigation Administrator either supports their position or is factually distinguishable. (*Id.* (internal citations omitted).) Relatedly, with respect to the Litigation Administrator's aiding and abetting claims, Defendant Krol argues that the Complaint's "allegations that Krol was an owner of [KeyFi Vehicle] and a recipient of transfers" from Stone are, respectively, contradicted by the terms of the Contractor Agreement,[10] and "insufficient to establish actual knowledge of and participation in breaches." (*Id.* at 12–13 (internal citations omitted).)

Finally, the Moving Defendants submit that the Complaint fails to satisfy even the "relaxed" pleading standard necessary to support the Litigation Administrator's RICO claims, adding that the Complaint inadequately alleges merely their receipt of the KeyFi Executives' purportedly fraudulent transfers. (Reply at 13–14.) Further, they claim that the Plaintiff "has not alleged either closed-ended or open-ended pattern of racketeering activity." (*Id.* at 14.) As to closed-ended continuity, the Moving Defendants contend that the factual allegations in the Complaint "do not allege a single predicate act before December 29, 2020, or after February 24, 2022, or spanning 14 months"— in contravention to the Complaint's paragraph pleading continuous "acts of racketeering . . . spanning from at least 2020-2023." (*Id.* (citing Complaint

---

[10]    Defendant Reichelt did not append to the Joinder a similar agreement governing his contractual relationship with Celsius KeyFi.  However, Reichelt identifies himself as "similarly situated" to Krol and adopts the Motion "in full." (Joinder at 2, 4.)

¶¶ 69(c)(i), 72(c)(vi), 74(b), 164).)  The Moving Defendants argue that the Plaintiff's RICO

claims are equally unsupported by any theory of "open-ended continuity," since "the alleged

predicate racketeering . . . had come to its conclusion when the Court restrained Stone and KeyFi

from transferring Celsius's assets, Stone and KeyFi subsequently reached a settlement with

Plaintiff, and Plaintiff has not alleged that Celsius's assets remain at risk of looting."  (Reply at

14.)

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding

by Federal Rule of Bankruptcy Procedure 7012, provides that a cause of action must be

dismissed for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P.

12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to

state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  The "plausibility" standard requires "more than a sheer possibility that a defendant

has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, "[w]here a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks

omitted).

A court evaluating a Rule 12(b)(6) motion to dismiss may consider "facts stated on the

face of the complaint, . . . documents appended to the complaint or incorporated in the complaint

by reference, and . . . matters of which judicial notice may be taken."  *Goel v. Bunge, Ltd.*, 820

F.3d 554, 559 (2d Cir. 2016) (internal citation and quotation marks omitted).  In order for the

documents to be incorporated by reference, "the complaint must make a clear, definite and

substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal citation and quotation marks omitted). Courts may also take judicial notice of "matters of public record, including filings in related lawsuits." *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) (citations omitted). Bankruptcy courts may take judicial notice of prior decisions or filings in the same bankruptcy case, including across other adversary proceedings. *See, e.g.*, *In re AMR Corp.*, 567 B.R. 247, 250 & n.2 (Bankr. S.D.N.Y. 2017) (taking judicial notice of prior decisions in "several different adversary proceedings in th[e] bankruptcy" for purposes of considering a motion to dismiss an adversary complaint); *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, 2020 WL 3067733, at *7 (Bankr. S.D.N.Y. June 8, 2020) (similar).

Finally, a reviewing court may consider documents that are "'integral' to the complaint," even if they are not expressly referenced in the complaint. *Goel*, 820 F.3d at 559. A document is "integral" to the complaint "where the complaint relies heavily upon its terms and effect." *Id.* (citation omitted). Often, the "integral" material is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). A court's consideration of such "integral" documents therefore "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.*

21

## B. Rule 9(b) Particularity Standard

Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, made applicable to

this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009,[11] requires plaintiffs to

"state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

In fraudulent transfer actions, courts have found that Rule 9(b) requires a plaintiff to describe the

specific injuries and the legal theories underlying its claims in a manner that allows the

defendant to prepare an effective answer or defense. *Am. Tissue,* 351 F. Supp. 2d at 107.

## III.    DISCUSSION

Counts III, IV and V are fraudulent transfer claims applicable to the Celsius Direct

Transfers, Celsius Indirect Transfers, and Executive Transfers, respectively; each count asserts

that the applicable transactions constituted both intentional fraudulent transfers and constructive

fraudulent transfers.  Counts I, II, and VII are turnover and accounting claims.  Count VI is for

unjust enrichment.  Count VIII is for conversion.  Count IX is for aiding and abetting Stone's

breach of fiduciary duty.  Finally, Count X alleges RICO violations.

For the reasons explained below, the Court **GRANTS** the Motion in part, without

prejudice to replead as to the dismissed claims.

### A.  Fraudulent Transfer Claims

#### 1.  Intentional Fraudulent Transfers

The Bankruptcy Code permits the avoidance of a transfer of a debtor's interest in

property made on or within two years of the filing of the bankruptcy petition if the transfer was

effectuated "with actual intent to hinder, delay, or defraud" the debtor's creditors.  11 U.S.C. §

---

[11]     Rule 9(b)'s particularity requirement applies to the intentional fraudulent transfer claims in Counts III, IV and V, as well as the mail and wire fraud allegations underlying the Plaintiff's RICO claim in Count X.  *See Sharp Int'l Corp. v. State Street Bank & Trust Co.,* 403 F.3d 43, 56 (2d Cir.2005).

548(a)(1)(A).  Claims of intentional fraudulent transfer must be pleaded with particularity.  *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005).  Accordingly, the issues for purposes of the Motion under Rule 12(b)(6) are whether the Litigation Administrator "has adequately pleaded the element of intent to hinder, delay or defraud creditors, and whether he has pleaded intent with the requisite particularity."  *Id.*

Plaintiff alleges three categories of intentional fraudulent transfers involving the Subject Property: the Celsius Direct Transfers; the Celsius Indirect Transfers and the Executive Transfers.  As relevant to the Moving Defendants, the applicable Celsius Direct Transfers are collectively alleged to have occurred between December 29, 2020 and May 12, 2021, (Complaint ¶¶ 69(a)(iii), 69(c)(i)), the applicable Celsius Indirect Transfers on February 19, 2022, or otherwise on or after September 21, 2021 (*id.* ¶¶ 71, 72(a)–(b)), and, as relevant to Defendant Krol, the applicable Executive Transfers between April 23, 2021 and February 19, 2022 (*id.* ¶ 74(a)).  As such, the earliest alleged transaction occurred on December 29, 2020, less than two years before Celsius filed for bankruptcy on July 13, 2022.  (*Id.* ¶ 69(c)(i).)  The timing requirements of Section 548(a)(1)(A) therefore pose no bar to the Litigation Administrator's claims.

The Court's analysis therefore turns on whether the Complaint plausibly and with the requisite particularity pleads that each of the alleged transfers were made with the intent to hinder, delay or defraud Celsius' creditors.  As previously recognized by this Court in the Curated Opinion, notwithstanding the Moving Defendants' suggestions to the contrary,[12] the Litigation Administrator is not required to establish that the *transferee* intended to hinder, delay

---

[12] *See, e.g.*, Motion at 21 ("Plaintiff has failed to allege with sufficient specificity in the Complaint the facts that show that Krol was complicit with or had knowledge of the Executive Defendants' intentional scheme to defraud Celsius's creditors.").

or defraud the debtor's creditors.  Rather, "only the intent of the *transferor* in making the transfer

is relevant" in assessing whether the requirements of Section 548(a)(1)(A) have been met.

Curated Opinion, 669 B.R. at 118; *In re Extended Stay, Inc.*, 2020 WL 10762310, at *85 (Bankr.

S.D.N.Y. Aug. 8, 2020) (citing *Actrade*, 337 B.R. at 808).   Given the difficulty of proving actual

intent, a plaintiff asserting intentional fraudulent transfer may rely on so-called "badges of

fraud," or "circumstances so commonly associated with fraudulent transfers that their presence

gives rise to an inference of intent," in order to satisfy plausibility and particularity pleading

burdens.  *Extended Stay*, 2020 WL 10762310, at *87 (citing *Sharp Int'l Corp. v. State Street

Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005)).   The badges of fraud

customarily considered by courts include:

> (1) lack or inadequacy of consideration;

> (2) the family, friendship or close associate relationship between the parties;

> (3) the retention of possession, benefit or use of the property in question;

> (4) the financial condition of the party sought to be charged both before and after the
>      transaction in question;

> (5) the existence or cumulative effect of a pattern or series of transactions or course of
>      conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of
>      suits by creditors;

> (6) the general chronology of the events and transactions under inquiry;

> (7) a questionable transfer not in the usual course of business; and

> (8) the secrecy, haste, or unusualness of the transaction.

*Actrade*, 337 B.R. at 809.  A plaintiff's identification of applicable badges of fraud helps "focus

the inquiry on the circumstances that suggest a *conveyance* was made with fraudulent intent, *viz.*

with the purpose of placing a debtor's assets out of the reach of creditors." *Id.* (citing *Sharp Int'l Corp.*, 302 B.R. at 784). In any given case, the proper inquiry is not "whether some factors are absent," but instead "whether the badges of fraud are present" when the case is considered as a whole. *Extended Stay*, 2020 WL 10762310, at *89 (citation omitted). While the "presence or absence of any single badge of fraud" is not conclusive proof of fraudulent intent, the confluence of several badges of fraud may constitute "clear and convincing evidence of actual intent." *Id.*

### a. *Celsius Direct Transfers*

As to the Celsius Direct Transfers alleged in subparagraphs 69(a)(ii), (a)(iii), (c)(i) and (iii) of the Complaint, the Moving Defendants argue that the Plaintiff "fails to establish either actual fraudulent intent or 'badges of fraud' sufficient to raise a strong inference of actual fraudulent intent." (Motion at 20.) Specifically, they respond as follows to each of the Litigation Administrator's allegations:

| Alleged Badge of Fraud | Moving Defendants' Response |
| --- | --- |
| Celsius received "less than reasonably equivalent value" from the transfers. | The Plaintiff's allegation that it received "less than reasonably equivalent value" is entirely conclusory and ignores the reality that, at the time of the alleged transfers, the Moving Defendants performed software development services for the benefit of Plaintiff. |
| The KeyFi Executives were "closely associated with the Contractor Defendants." | The Plaintiff's conclusion that the Moving Defendants were "closely associated" with the KeyFi Executives is belied by Defendant Krol's Contractor Agreement with Celsius KeyFi, which makes clear that he was hired as an independent contractor software developer for Celsius KeyFi . . . and is not an "insider" as defined by 11 U.S.C. § 101(31)(B). |
| The transfers were made while Celsius was insolvent, or else caused it to become insolvent. | The Plaintiff's allegations that Celsius was insolvent "at any given time between 2020 and 2022" . . . are undermined by the fact that it did not file for bankruptcy until July 13, 2022. |

25

| Alleged Badge of Fraud | Moving Defendants' Response |
|---|---|
| The transfers were part of a broader scheme to misappropriate tens of millions of dollars' worth of Celsius assets. | The Plaintiff has failed to allege with sufficient specificity in the Complaint the facts that show that the Moving Defendants were complicit with or had knowledge of the KeyFi Executives' intentional scheme to defraud Celsius's creditors. |

(Motion at 21 (citing Complaint ¶ 103).)

The Court considers each of the Moving Defendants' arguments in turn. *First*, the Moving Defendants' suggestion that the transfers may have been effectuated as compensation for software services rendered to Celsius KeyFi does not undercut the Complaint's well-pleaded allegation that Celsius received "less than reasonably equivalent value" for the transfers. As the Litigation Administrator notes, "reasonably equivalent value" is, at best, a fact issue, (Opposition at 19), and the reasonableness of the transfers as compensation to any of the Contractor Defendants depends in part on the nature or quantity of the compensation, facts relating to the work performed, and more. *See, e.g.*, *Am. Tissue*, 351 F. Supp. 2d at 105–06; *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 113 (Bankr. S.D.N.Y. 2011). As such, dismissal on this basis would be premature. *Second*, the Moving Defendants' contention that the Contractor Agreement, alone, defeats the Plaintiff's pleading of the "close association" badge is misguided.[13] Like "reasonably equivalent value, "close association" is a fact issue. Moreover, the Motion ignores additional factual allegations in the Complaint which speak to the Moving

---

[13]    Many of the Complaint's causes of action—including but not limited to the fraudulent transfer, unjust enrichment, aiding and abetting, and RICO claims—hinge on the precise nature of the relationships between the defendants and Celsius KeyFi, KeyFi Vehicle, Stone, and the KeyFi Executives. (*See, e.g.*, Complaint ¶ 17 (identifying Defendant Krol as a contractor of Celsius KeyFi "during the time that Executive was CEO of Celsius KeyFi.").) Although the Complaint does not expressly reference the Contractor Agreement, it is clearly "integral" to certain of the relational theories underpinning the Litigation Administrator's claims. Accordingly, the Court therefore takes judicial notice of the Contractor Agreement. *See Goel*, 820 F.3d at 559 (internal quotation marks omitted).

Defendants' close ties to Stone and the KeyFi Executives, including their status as owners of

KeyFi Vehicle (Celsius KeyFi's predecessor), as well as Stone's testimony that he transferred

funds previously routed through Tornado Cash to both of the Moving Defendants. (Complaint ¶

17, 66.)

     *Third*, as to the "insolvency" badge, the Moving Defendants' observation that Celsius

"did not file for bankruptcy until July 13, 2022," (Motion at 21), is insufficient to defeat the

Complaint's other allegations regarding Celsius' insolvency, including that its consolidated

balance sheet demonstrated negative equity as early as September 30, 2020—several months

before the first alleged fraudulent transfer to Defendant Krol. (Complaint ¶ 79.) *Fourth*, as

discussed above, this Court has already rejected the argument that a *transferee*'s purported lack

of knowledge of an alleged fraudulent transfer scheme is sufficient to defeat the allegation at the

motion to dismiss stage. Curated Opinion, 669 B.R. at 118 (citing *Extended Stay*, 2020 WL

10762310, at *85). Accordingly, the Moving Defendants' response to the "badges of fraud"

identified by the Plaintiff is insufficient to justify dismissal of the Celsius Direct Transfers

alleged in paragraphs 69(a)(ii), (a)(iii), (c)(i) and (iii) of the Complaint. Rather, based on "the

presence of multiple badges of fraud," the Court finds that the Litigation Administrator "has

adequately alleged the fraudulent intent element of [the] actual fraudulent transfer claims" with

plausibility and particularity. Curated Opinion, 669 B.R. at 120; *see also Extended Stay, Inc.*,

2020 WL 10762310, at *89 (collecting cases finding that four to five badges of fraud are

sufficient to constitute "clear and convincing evidence of actual intent").

     The Moving Defendants also argue that two of the Celsius Direct Transfers, set forth in

paragraphs 69(a)(i) and 69(c)(ii), should be dismissed since they were alleged to have been made

to both of the Moving Defendants, as well as Defendant Maciej Zaleski. (Motion at 20.)

However, the Complaint adequately pleads the contested transfers separately as to each of the Moving Defendants, including by identifying the date, quantity, transferor, transferee, and transaction hash.  The fact that multiple transferees may have been the recipients of specific transactions does not disturb the well-pleaded and particularized allegations in the Complaint with respect to those transactions.  Accordingly, the Complaint satisfies Rule 9(b)'s particularity requirement as to the transfers identified in paragraph 69(a)(i) and 69(c)(ii) of the Complaint.

The same, however, is not true of the transfers to the "Contractor Defendants" set forth in paragraph 69(e), which provide merely that Celsius wallets made transfers to "one or more Contractor Defendants."  (Complaint ¶ 69(e).)  The transfers identified in this subparagraph fail to allege with particularity the identities of the transferees, and therefore constitute impermissible group pleading.  *See In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d at 147 (in alleging fraud against multiple defendants, a plaintiff cannot "simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b)." (internal citations omitted)).

### b.  *Celsius Indirect Transfers*

The Moving Defendants contest the intentional fraudulent transfer claim set forth in Count IV on the basis that they were "mediate transferee[s]" of the Celsius Indirect Transfers identified in subparagraphs 72(a) and (b) of the Complaint, rather than the "initial transferee[s]." (Motion at 22 (citing Complaint ¶ 72(b).)  Specifically, they rely on Section 550(a)(2) of the Bankruptcy Code, which limits recovery from a subsequent transferee who pays value, in good faith and without knowledge of the voidability of the transfer at issue.  The Moving Defendants contend that the Plaintiff's failure to "allege either [their] lack of good faith or [their] knowledge that the funds may have originated from the Celsius Wallets and initial transfers were voidable"

requires dismissal of its claims.  (Motion at 22.)  However, this Court rejected this argument in the Curated Opinion, observing that "the question of a transferee's good faith in a fraudulent transfer action is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage."  Curated Opinion, 669 B.R. at 122 (citations omitted).  The Litigation Administrator had no obligation to plead good faith in anticipation of any affirmative good faith mediate transferee defenses raised by the Moving Defendants, as "lack of good faith is not an element of a plaintiff's claim under Section 548(a)(1)."  *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007).  Accordingly, the Court declines to dismiss the intentional fraudulent transfer claims against the Moving Defendants arising out of the Reichelt Celsius Indirect Transfer and the Krol Celsius Indirect Transfer.

However, for the same reasons articulated above as applicable to the Celsius Direct Transfers allegedly made to the "Contractor Defendants," the intentional Celsius Indirect Transfers alleged to have been made to "one or more Contractor Defendants," (Complaint ¶¶ 72(d)–(e)), constitute impermissible group pleading and should be dismissed without prejudice.

### c.  *Executive Transfers*

As to the Executive Transfers purportedly made to Defendant Krol, Krol argues that the Litigation Administrator's intentional fraudulent transfer claims fail as the Complaint does not properly plead "a claim against Krol as a mediate transferee."  (Motion at 26–27.)  The Litigation Administrator responds without elaboration that this defense does not apply to the Executive Transfers.  (Opposition at 21.)  In any case, for the same reasons articulated above with respect to the Celsius Indirect Transfers, this anticipated defense does not preclude the survival of these claims at the motion to dismiss stage.

29

Krol raises the separate argument that "Celsius's litigation claims against Stone and KeyFi that give rise to this cause of action have already been resolved by the settlement between CNL and Celsius KeyFi, on the one hand, and Stone and KeyFi, on the other." (Motion at 27.) As this Court recognized in the Curated Opinion, however, the aforementioned settlement agreement is not integral to the Litigation Administrator's claims of fraudulent transfer against a non-party to that agreement. Curated Opinion, 669 B.R. at 121 n.5. Likewise, the Court again declines to take judicial notice of the settlement agreement in this adversary proceeding at the motion to dismiss stage.

Accordingly, Counts III, IV, and V of the Complaint adequately state claims for intentional fraudulent transfer, except as to paragraphs 69(e)–(f) and 72(d)–(e). Therefore, the Court **GRANTS** the Motion in part and **DISMISSES** Counts III and IV exclusively with respect to the transfers alleged in paragraphs 69(e)–(f) and 72(d)–(e), without prejudice to replead.

### 2. Constructive Fraudulent Transfer

Section 548(a)(1)(B) of the Bankruptcy Code allows avoidance of an otherwise permissible transfer where:

(i) The debtor received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) The debtor:

  a. Was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

  b. Was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

  c. Intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

  d. made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

30

The Moving Defendants generally offer the same arguments raised with respect to the intentional fraudulent transfer claims in support of dismissal of the constructive fraudulent transfer claims. *First*, as relevant to the Celsius Direct Transfers, Defendant Krol and Defendant Reichelt argue that the two transfers alleged in subparagraphs 69(a)(i) and 69(c)(ii) are separately alleged against both of them along with Defendant Zaleski; they further contest as "conclusory" the allegation that Celsius received "less than reasonably equivalent value" in exchange for the transfers. (Motion at 24–25.) For the reasons articulated *infra* at Section III(A)(1)(a), the Court declines to dismiss the constructive fraudulent transfer claims set forth in Count III of the Complaint arising out of the transfers identified in paragraphs 69(a) and (c) of the Complaint. Accordingly, the Court **GRANTS** the Motion in part and **DISMISSES** Count III without prejudice solely with respect to the constructive fraudulent transfer claims arising out of the transfers to the "Contractor Defendants" identified in paragraph 69(e)–(f) of the Complaint.

*Second*, with respect to the Celsius Indirect Transfers, the Moving Defendants again assert that "Plaintiff has not established the right to recover from [them] as . . . mediate transferee[s] of the transaction at issue." For the reasons discussed *infra* at Section III(A)(1)(b), the Court also rejects this argument, and declines to dismiss the constructive fraudulent transfer claims set forth in Count IV of the Complaint which arise out of the transfers identified in paragraph 72(b) of the Complaint. Therefore, the Court **GRANTS** the Motion in part and **DISMISSES** Count IV without prejudice solely with respect to the constructive fraudulent transfer claims arising out of the transfers to the "Contractor Defendants" identified in paragraph 72(d)–(e) of the Complaint.

Defendant Krol does not offer distinct arguments in support of the Complaint's constructive fraudulent transfer claims arising out of the Krol Executive Transfers. Accordingly,

for the reasons discussed *infra* at Section III(A)(1)(iii), the Court **DENIES** dismissal of the
Complaint as to Count V.

### B.  Turnover & Accounting Claims

Counts I, II, and VII of the Complaint assert turnover and accounting claims.  Counts I
and II request relief pursuant to 11 U.S.C. § 542(a) and § 542(e), respectively, and Count VII
appears to request an accounting pursuant to New York law.

As to Counts I and II, the Moving Defendants assert that the Complaint fails to allege a
turnover claim because title to the Subject Property is in dispute and is also pleaded as the
subject of fraudulent transfer claims (specifically, the Celsius Direct Transfers and Celsius
Indirect Transfers).  (Motion at 17–18.)  As the Bankruptcy Code requires there to be "no dispute
that the property that is the object of the turnover claim is estate property," the Moving
Defendants contend that the pending fraudulent transfer claims relating to the Subject Property
preclude turnover and accounting relief under Section 542.  11 U.S.C. § 542(a).

This Court, however, squarely rejected this argument in the Curated Opinion, observing
that acceptance of this position would result in "any complaint asserting a fraudulent transfer
claim (or any other claim) relating to purportedly misappropriated estate property [being]
prohibited from simultaneously seeking turnover of that misappropriated property."  Curated
Opinion, 669 B.R. at 122.  The Court reaches the same conclusion here, and declines to dismiss
Count I.  Similarly, the Complaint adequately pleads a claim for the related relief afforded under
Section 542(e); accordingly, the Court likewise declines to dismiss Count II.

With respect to Count VII, the Moving Defendants argue that New York law does not
permit a claim for accounting the parties to the transaction do not have a "fiduciary [or
confidential] relationship."  (Motion at 28–29.)  However, as this Court recognized in the

Curated Opinion and other adversary proceedings in these Chapter 11 Cases, claims for

accounting are warranted where "the consideration and adjudication of issues relat[e] to an

account of a complicated character, even in the absence of any element of mutuality or of trust

relationship."  Curated Opinion, 669 B.R. at 122–23 (internal citations omitted).  Here, the

"complicated" nature of the transfers is apparent—among other factual complexities, some of the

transfers to the Moving Defendants were allegedly funneled through the Tornado Cash Mixer to

obfuscate the destination of the assets.  (Complaint ¶¶ 63–66.).  As such, the Court declines to

dismiss Count VII on the basis of the absence of a confidential or fiduciary relationship between

the Moving Defendants and Celsius.

Accordingly, the Court **DENIES** the Motion as to Counts I, II, and VII of the Complaint.

### C.  Unjust Enrichment Claim

Count VI of the Complaint asserts a claim for unjust enrichment.  In order to adequately

plead a cause of action for unjust enrichment under New York law, a plaintiff must show that:

"1) [the] defendant was enriched; 2) [the] defendant's enrichment came at plaintiff's expense;

and 3) circumstances were such that in equity and good conscience defendant should compensate

plaintiff."  *Shamrock Power Sales, LLC v. Scherer*, 2015 WL 5730339, at *31 (S.D.N.Y. Sept.

30, 2015) (alterations and internal citations omitted).  The Moving Defendants argue that this

Court should dispose of the Litigation Administrator's unjust enrichment claim as duplicative of

its fraudulent transfer claims.  However, courts in the Second Circuit routinely permit the

alternative pleading of unjust enrichment claims at the motion to dismiss stage, even where

claims offering purportedly equivalent relief—including fraudulent transfer claims—are also

alleged.  *See, e.g.*, *Pereira v. Frenkel Benefits, LLC (In re Moyer Group, Inc.)*, 586 B.R. 401, 412

(Bankr. S.D.N.Y. 2018) (declining to dismiss unjust enrichment claim at the pleading stage

"simply because other claims for relief providing similar recovery—namely preference and fraudulent transfer claims— are also asserted."); *Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84, 99–100 (Bankr. S.D.N.Y. 2013) (declining to dismiss unjust enrichment claim allegedly duplicative of fraudulent transfer claims); *Silverman v. H.I.L. Assocs. Ltd (In re Allou Distribs., Inc.)*, 387 B.R. 365, 412–13 (Bankr. E.D.N.Y. 2008) (same). Accordingly, the Court **DENIES** the Motion as to Count VI.

### D. Conversion Claim

Count VIII of the Complaint asserts a claim for conversion. In order to adequately plead a claim for conversion under New York law, a plaintiff must allege that "(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Koziar v. Blammo, Ltd.*, 759 F. Supp. 3d 543, 551 (S.D.N.Y. 2024) (citations omitted). Here, the Moving Defendants allege that—unlike Stone— they did not "have access to nor exercised control over Subject Property in Celsius Wallets." (Motion at 29–30.) Rather, they aver that they were merely "passive rec[ipients]" of the converted funds, a role "insufficient to establish a claim for conversion." (Reply at 12.) However, this defense does not undercut the well-pleaded allegations in the Complaint, which establish that the Subject Property was at relevant times placed in the Moving Defendants' wallets—to which, as the Litigation Administrator notes, "Celsius did not have the private keys." (Opposition at 27–28.) The Moving Defendants' receipt and possession of the Subject Property within their own wallets—notwithstanding Celsius' demand for the return of their assets—is sufficient to establish a reasonable inference that the Moving Defendants "exercised

unauthorized dominion" over the Subject Property.  Accordingly, the Court **DENIES** the Motion as to Count VIII of the Complaint.

### E.  Aiding and Abetting Claim

Count IX of the Complaint asserts a claim for aiding and abetting Stone's breach of fiduciary duty.  To adequately plead a claim for aiding and abetting, a plaintiff must allege: (1) the existence of an underlying tort; (2) the defendant's actual knowledge of the underlying tort; and (3) the defendant's provision of substantial assistance in the commission of the underlying tort.  *Bayou*, 472 F. Supp. 2d at 532.  The Moving Defendants assert that the Complaint's allegations in support of this claim are "entirely conclusory," unsupported by "factual" allegations, and "contradicted by the express terms of Krol's Contractor Agreement" with Celsius KeyFi.  (Motion at 30.)  Specifically, Defendant Krol submits that, in his capacity as a software engineer, he "did not participate in Stone's decision-making relating to deployment of Celsius's funds," instead focusing on more limited software development activities.  (*Id.*) However, as the Litigation Administrator observes in opposition, the Motion selectively draws from the Complaint, which includes other significant factual indicia of "actual knowledge" of Stone's activities applicable to either or both of Defendant Krol and Defendant Reichelt. (Opposition at 28–29.)  For example, the Complaint alleges that: (i) the Moving Defendants were not just contractors of Celsius KeyFi, but also owners of KeyFi Vehicle (Complaint ¶¶ 11, 17); (ii) KeyFi Vehicle received a copy of the written resolutions demanding return of all CNL's coins on March 26, 2021 (*id.* ¶¶ 52–53); (iii) during the same period in which the KeyFi Executives were allegedly returning CNL's assets, Defendant Krol received 435 ETH and 5.26 WBTC from Executive Wallets (*id.* ¶ 74(a)); and (iv) each of the Moving Defendants individually received portions of the $1.4 million worth of cryptocurrency taken from Celsius'

wallet, approximately six months after the KeyFi Executives were commanded to return the CNL

assets to Celsius (*id.* ¶ 66). (*See* Opposition at 28–29). These additional factual allegations

collectively indicate that the Litigation Administrator's theory extends far beyond the fact of

Krol and Reichelt's "mere employment" by Celsius KeyFi. (Motion at 30.) Accordingly, the

Court **DENIES** the Motion as to Count IX.

### F.  RICO Claim

Finally, Count X of the Complaint asserts a claim for violations of the RICO Act. To

state a RICO claim under 18 U.S.C. § 1962(b) and (c), a plaintiff must plead the following

elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting

a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an

interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or

foreign commerce." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 154 (S.D.N.Y.

2000) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). To establish mail

and wire fraud, a plaintiff must show: (1) the existence of a scheme to defraud, (2) the

defendant's knowing or intentional participation in the scheme, and (3) the use of interstate wire

communications in furtherance of the scheme, or the use of the United States mails in

furtherance of the scheme. *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633

(2d Cir. 1996).

The Moving Defendants first challenge the RICO claims on the basis that the Complaint

fails to establish that they were "intentionally engaged in a scheme to defraud." (Motion at 32)

Specifically, the Moving Defendants allege that while "*Stone* initiated certain transfers of Celsius

funds," there is "no showing of [their] knowing participation in Stone's activities" sufficient to

36

support a claim of a collective enterprise to defraud Celsius.[14] (*Id.*)  The Moving Defendants submit that they cannot be "charged with knowledge that the transfers were in any way unlawful simply because [they] had contracted for his services with KeyFi and [were] working at Stone's direction when the transfers took place."  (*Id.*)  However, as discussed above with respect to the aiding and abetting claims, the Complaint does adequately establish both Moving Defendants' knowing participation in the facilitation of the transfers through their alleged ownership of KeyFi Vehicle, their resultant immediate notification of Celsius' directive to return CNL's coins, and their subsequent receipt of CNL assets.  (Opposition at 31; *see also* Joinder Opposition at 3–4.)

As to RICO continuity, the Litigation Administrator asserts that it has adequately pleaded both closed-ended and open-ended continuity.  As to closed-ended continuity, the Moving Defendants correctly observe that—despite alleging in conclusory fashion that "the acts of racketeering have been continuous spanning from at least 2020-2023," (Complaint ¶ 164)—the factual allegations in the Complaint only identify predicate acts ranging across a span of 14 months.  (Reply at 14 (citing Complaint ¶¶69(c)(i), 72(c)(vi), 74(b)).)  Accordingly, the Complaint does not establish closed-ended continuity.  *See Bayshore Cap. Advisors, LLC v. Creative Media Fin. Corp.*, 667 F. Supp. 3d 83, 134–35 (S.D.N.Y. 2023) (requiring minimum two-year period for establishment of closed-end continuity).

However, the Complaint does establish "open-ended" continuity on the basis of "the "threat of continuing criminal activity beyond the period during which the predicate acts were performed."  *See DeFalco v. Bernas*, 244 F.3d 286, 323 (2d Cir 2001).  To assess whether a plaintiff has adequately pled open-ended continuity, a court must examine both the nature of the

---

[14]    (*See also* Joinder at 4 ("The Complaint's RICO allegations are entirely conclusory as to Reichelt" and contain only a "bare allegation, without any facts specific to Reichelt").)

RICO enterprise as well as the predicate acts alleged.  Where, as here, the RICO enterprise and

alleged predicate acts involve "an ongoing scheme to defraud Celsius and its creditors through a

pattern of theft, unlawful turnover, and fraudulent transfers involving the use of readily

transferrable cryptocurrency," (Opposition at 31–32), there exists an implied threat of continued

criminal activity.  Because the Complaint adequately alleges open-ended RICO continuity, the

Court **DENIES** the Motion as to Count X.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** the Motion with respect to Counts I, II, V,

VI, VII, VIII, IX, and X of the Complaint.  With respect to Counts III and IV, the Court

**GRANTS** the Motion solely with respect to the fraudulent transfer claims arising out of the

transfers to the "Contractor Defendants" identified in paragraphs 69(e)–(f) and 72(d)–(e) of the

Complaint.  The Court accordingly **DISMISSES** Counts III and IV of the Complaint as

applicable to the transactions identified in paragraphs 69(e)–(f) and 72(d)–(e).  The Court's

partial dismissal of Counts III and IV is without prejudice.

**IT IS SO ORDERED.**

Dated:   August 5, 2025
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge